IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY a/s/o TODD AND GRACE JOHNSTON**<br>2775 Sanders Road<br>Northbrook, IL 60062<br><br>　　　　　　　　Plaintiff(s),<br>　　v.<br><br>**BROAN-NUTONE, LLC**<br>926 West State Street<br>Hartford, WI 53027<br><br>　　　　　　　　Defendant(s) | Civil Action No:<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff, Allstate Insurance Company a/s/o Todd and Grace Johnston, by and through its undersigned counsel, hereby demands judgment against Defendant, and complains against it as follows:

## PARTIES

1.　Plaintiff, Allstate Insurance Company a/s/o Todd and Grace Johnston (hereinafter "Allstate" or "Plaintiff"), is a commercial entity organized and existing under the laws of the State of Illinois with its principal place of business located at 2775 Sanders Road, Northbrook, IL 60062, which, at all times relevant hereto, was duly authorized to engage in the business of insurance in the Commonwealth of Pennsylvania.

2.　At all times relevant hereto, Allstate provided property insurance to Todd and Grace Johnston (hereinafter "Johnstons" or "Subrogors") in connection with their property located at 622 7th Avenue, Folsom, Pennsylvania 19033 (hereinafter "subject property"), under a policy of insurance that was in full force and effect on all relevant dates, and at all relevant times.

3. In the wake of the incident described below, as a result of a claim made on said policy (which was duly paid pursuant thereto), Allstate became subrogated to certain recovery rights and interests of the Johnstons for monies paid thereunder, including the claims giving rise to the within cause of action.

4. Defendant Broan-NuTone, LLC (hereinafter "Broan" or collectively "Defendant") is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business located at 926 W. State Street, Hartford, Wisconsin, which at all times relevant hereto, was duly authorized to engage in business in the Commonwealth of Pennsylvania, and was engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing and selling ceiling ventilation fans such as the one at issue at the subject property.

## JURISDICTION AND VENUE

5. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

6. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

7. Prior to February 5, 2018, Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce exhaust/ventilation fans with accompanying component parts, said product being intended for use by consumers for the ordinary purpose associated with exhaust/ventilation fans.

8. Prior to February 5, 2018, an exhaust/ventilation fan (hereinafter the "subject fan"), designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce by Defendant was installed at the subject property.

9. Prior to February 5, 2018, Plaintiff operated the subject fan without incident in the normal, ordinary and intended matter and purpose.

10. On or about February 5, 2018, a fire originated at the subject fan located in the second floor bathroom at the subject property. The fire, and/or heat, smoke and soot therefrom, spread throughout the subject property, thereby causing substantial damage to the subject property.

11. At all times material hereto, the Defendant knew and intended that its exhaust/ventilation fans would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said ventilation fans would be utilized.

12. Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce the aforesaid subject fan, including its component parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction.

13. As a result of the incident, Plaintiff sustained damage to its real and personal property, as well as the imposition of additional expenses and hardship besides, in an amount in excess of $150,000.00.

14. The incident and consequent damages were directly and proximately caused by Defendant, as is further and more fully described below.

## COUNT I – STRICT LIABILTY v. BROAN-NUTONE, LLC

15. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

16. Broan was engaged, in the business of designing, testing, inspecting, assembling, manufacturing and distributing exhaust/ventilation fans and their component parts and specifically designed, tested, inspected, assembled, manufactured, distributed and placed into the stream of commerce the subject fan at issue in this case.

17. The subject fan, which was designed, manufactured, sold and/or distributed into the stream of commerce by Broan, was not modified, changed altered or abused by Plaintiff or other users at the subject property prior to or during its use.

18. Broan knew and intended that its exhaust/ventilation fans would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said ventilation fans would be utilized.

19. Broan designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the aforesaid subject fan, including its component parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction.

20. Broan designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the aforesaid subject fan in a defective condition, unreasonably dangerous to the Johnstons and their property.

21. Broan knew, or should have known, that the subject fan would, and did, reach the Johnstons without substantial change in the condition in which originally selected and sold.

22. The Johnstons operated the subject fan without incident in the normal, ordinary and intended matter and purpose at all times prior to February 5, 2018.

23. The fire and damage to the Johnston's property was caused by and/or resulted from the acts and/or omissions of Broan, by and through its agents, servants, employees and/or

representatives, acting within the course and scope of their employment and/or authority for which Broan is liable to Plaintiff based upon the theory of strict liability for the following reasons:

    a. failing to design, manufacture, inspect, assemble, distribute and/or market a properly functioning and defect-free ventilation fan, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b. failing to properly design, manufacture, inspect, assemble, distribute and/or market the electrical components, such as the motor, motor windings, insulation and other component parts of the motor free from defect;

    c. failing to properly determine that the subject fan, including its electrical components, such as the motor, its windings and insulation and other component parts of the motor were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

    d. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan, and its component parts were unsafe and unfit for its intended use;

    e. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan would be inadequate for the reasons for which it was purchased;

    f. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan which had unreasonably dangerous electrical components, including but not limited to its motor, motor windings, insulation and other component parts of the motor that caused the fan to catastrophically fail and/or malfunction;

    g. designing, manufacturing, inspecting, assembling, distributing and/or marketing a dangerously defective fan that Broan knew or reasonably should have known exposed users, such as the Johnstons to an unreasonable risk of harm;

    h. failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the fan, and its component parts, prior to introducing it into the stream of commerce;

    i. failing to provide adequate and sufficient warnings and instructions with respect to the subject fan, which rendered it defective and unreasonably dangerous;

j. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain proper safety features to prevent the buildup of lint, dust or other combustible particles in the fan rendering it hazardous and dangerous for its contemplated and intended use;

k. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain a proper motor, rendering it hazardous and dangerous for its contemplated and intended use;

l. designing, manufacturing and distributing a dangerously defective fan, including its component parts, that Broan knew or reasonably should have known exposed users, such as Plaintiff to an unreasonable risk of harm because the insulation on the motor windings was subject to degradation allowing the windings to come into contact with one another, creating arcing that ignited combustible materials known to collect in and around the motor;

m. designing, manufacturing, inspecting, assembling, distributing and/or marketing the fan in a defective condition because degradation temperature of the insulation on the motor windings was at or above the ignition temperature of cellulosic material known to collect in and around the motor; and

n. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the insulation on the motor windings would degrade and allow the windings to come into contact with one another.

24. The aforementioned defects or defective conditions existed at the time the subject fan left the possession and/or control of Broan.

25. The defective, unreasonably dangerous and unsafe condition of the subject fan as aforesaid was a direct and proximate cause of the damages sustained by Plaintiff.

26. For these reasons, Broan is strictly liable to Plaintiff under Section 402A of the Restatement (2d) of Torts, and the applicable case law of the Commonwealth of Pennsylvania.

27. As a direct and proximate result of the aforementioned defects, Plaintiff sustained and incurred damage to its real and personal property, as well as the imposition of additional expenses and hardship in an amount in excess of $150,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $150,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – NEGLIGENCE v. BROAN-NUTONE, LLC

28. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

29. Broan owed a duty of reasonable care to Plaintiff in regard to the design, manufacture, assembly, testing, inspection, marketing and distribution, inter alia, of the subject fan, and breached said duty.

30. The aforementioned damages were the direct and proximate result of the negligence and carelessness conduct and/or acts or omissions of Broan, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically failing to exercise reasonable care described as follows:

   a. failing to design, manufacture, inspect, assemble, distribute and/or market a properly functioning and defect-free fan, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

   b. failing to properly design, manufacture, inspect, assemble, distribute and/or market the electrical components, such as the motor windings, winding insulation and other components of the motor free from defect;

   c. failing to properly determine that the subject fan, including its electrical components, such as the motor, its windings and insulation, and other components of the motor were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

   d. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan was unsafe and unfit for its intended use;

   e. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan would be inadequate for the reasons for which it was purchased;

 f. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan which had unreasonably dangerous electrical components, including but not limited to its motor, motor windings and insulation and other components of the motor that caused the subject fan to catastrophically fail and/or malfunction;

 g. designing, manufacturing, inspecting, assembling, distributing and/or marketing a dangerously defective fan that Broan knew or reasonably should have known exposed users, such as Plaintiff, to an unreasonable risk of harm;

 h. failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the subject fan, and its component parts, prior to introducing it into the stream of commerce;

 i. failing to provide adequate and sufficient warnings and instructions with respect to the subject fan, which rendered it defective and unreasonably dangerous;

 j. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain proper safety features to prevent the buildup of lint, dust or other combustible particles in the subject fan rendering it hazardous and dangerous for its contemplated and intended use;

 k. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain a proper motor, rendering it hazardous and dangerous for its contemplated and intended use;

 l. designing, manufacturing and distributing a dangerously defective fan, including its component parts, that Broan knew or reasonably should have known exposed users, such as Plaintiff, to an unreasonable risk of harm because the insulation on the motor windings was subject to degradation allowing the windings to come into contact with one another, creating arcing that ignited combustible materials known to collect in and around the motor;

 m. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because degradation temperature of the insulation on the motor windings was at or above the ignition temperature of cellulosic material known to collect in and around the motor; and

 n. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the insulation on the motor windings would degrade and allow the windings to come into contact with one another.

31. As a direct and proximate result of Broan's aforementioned actions, and/or omissions, Broan acted negligently or carelessly, and is therefore liable to the Plaintiff for the damages she suffered.

32. As a direct and proximate result of the aforementioned negligence and careless conduct of Broan, Plaintiff sustained and incurred damage to its real and personal property, as well as the imposition of additional expenses and hardship in an amount in excess of $150,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $150,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTIES v. BROAN-NUTONE, LLC

33. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

34. In light of the defects alleged in the preceding counts, Broan did not provide a product of merchantable quality, reasonably fit for the purposes (general and specific) for which intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

35. Plaintiff used the subject fan in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon it in order to recover on this count.

36. As a direct and proximate result of the breach of express and implied warranties, Plaintiff sustained and incurred damage to its real and personal property, as well as the imposition of additional expenses and hardship in an amount in excess of $150,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $150,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

BY: _/s/ Kevin M. McBeth_

**KEVIN M. MCBETH, ESQUIRE**

PA ID: 91288
Three Valley Square, Suite 220
Blue Bell, PA 19422
215-383-0081
215-383-0082 (fax)
kmcbeth@delucalevine.com
**ATTORNEYS FOR PLAINTIFF**

**Dated:** June 11, 2018